### JAMES T. WYMAN *vs.* HARRISON GILLETT *et al.*

Argued June 28, 1893.    Affirmed Sept. 8, 1893.

### Contract Obtained by Fraud and Falsehood.

Evidence *held* sufficient to justify the court in finding that the defendants were induced to surrender certain policies of insurance, and accept others in lieu thereof, through fraudulent representations, and under circumstances reasonably such as to mislead and prevent them from examining the new policies in detail, and discovering the difference between them and the surrendered policies.

### Findings of Fact not Reviewed.

Other findings of fact *held* supported by the record.

Appeal by plaintiff, James T. Wyman, Receiver, &c., from a judgment of the District Court of Wabasha County, *Chas. M. Start*, J., rendered March 2, 1893, dismissing his action on the merits with costs.

The Minneapolis Mutual Fire Insurance Company was incorporated in 1885 under Laws 1881, ch. 91, authorizing the formation of millers and manufacturers mutual insurance companies. On September 22, 1886, the defendants, Harrison Gillett and his son James H. Gillett were partners in business under the firm name of H. Gillett & Son. On that day they were insured by the company for five years against loss by fire. They received two policies, one upon each of two separate properties and they on that day gave the insurance company therefor their two promissory notes each for $195, payable in installments at such times as the directors of the company might order or assess. Assessments were made at various times which they paid until the notes were both paid in full.

The insurance company became insolvent and on December 18,

1890, the District Court of Hennepin County, appointed Charles Shandrew receiver of its property under 1878 G. S. ch. 76. He assumed the duties of the appointment, but afterwards on February 7, 1891, departed this life. The plaintiff James T. Wyman was soon after appointed receiver in his stead and accepted the trust, and as such receiver he made a report to the court showing the assets and liabilities of the company and on May 19, 1891, procured an order directing him to make and collect an assessment of fifty per cent. upon all obligations of policy holders to the company.

The policies to Gillett & Son each provided that in no event should they be called upon to pay more than the amount of the note for $195, mentioned in it. But on December 27, 1889, the officers of the insurance company induced Gillett & Son to surrender their policies and accept new ones in their stead. These new policies each provided that the insured should be liable for five annual premiums of $39 each, beside the liability on the premium note. This action was brought to recover fifty per cent. of this liability—that is, $97.50 on each policy.

The defendants answered that they were induced to accept the new policies in place of the old ones by false and fraudulent representations of the officers of the company. They alleged among other things that the officers represented that the new policies were more liberal and contained less onerous conditions than the original ones and that the change was desired to comply with Laws 1889, ch. 217, providing for a uniform standard policy. Misled by this and other statements and relying thereon, the defendants did not read the new policies, but accepted them and surrendered the old ones. For these reasons the defendants asked that the new policies be cancelled and that they be relieved from liability thereunder. The issues were tried in November, 1892. The court made findings and ordered judgment dismissing the action on the merits, saying: A failure to read an instrument ordinarily affords no ground for relief, but the rule is limited to cases where the parties deal as strangers and there is no element of trust and confidence. Such was not the case here. The parties were members of a mutual company and the officers undertook to advise the defendants as to the terms and effect of the new policies. Gillett & Son were not, under the circumstances, guilty of negligence in believing the state-

ments of the officers and omitting to read the policies. Judgment was entered and the plaintiff appeals. No case or bill of exceptions was made. The evidence in support of the fraud charged in the answer was not before this court. For other questions under this insolvency proceeding see *In re Minneapolis Mutual F. Ins. Co.*, 49 Minn. 291.

*Keith, Evans, Thompson & Fairchild*, for appellant.

The insured were bound by the terms of the new policy, including the liability to assessment. There was a sufficient consideration to support the new agreement, viz: the assumption by their fellow members of a like liability, which directly benefited them by increasing the security given by their insurance. There was no fraud practiced upon the defendants to induce them to accept the new policy. The circular letter was not untrue. The insured had both policies · in their possession and had ample opportunity to examine and compare them, and must be presumed to have done so. The acceptance and retention of the new policies for so long a time, without objection, precludes the defendants from now questioning their liability thereon.

If the respondents were induced by misrepresentations to accept the new policies, they were not thereby excused, for the misrepresentations were as to the legal effect of an instrument which was open to the inspection of both parties alike. *Cobb* v. *Wright*, 43 Minn. 83; *Kochler* v. *Beeber*, 122 Pa. St. 291; *Follansbee* v. *Johnson*, 28 Minn. 311.

*Allen J. Greer* and *Wesley Kinney*, for respondents.

VANDERBURGH, J. This case was tried by the court, and judgment ordered for the defendants.

The case must be determined upon the findings of the court. As the evidence is not returned, its sufficiency to support the findings of fact cannot be considered, except as respects the circular below referred to, which is made a part of the findings, and which is to be considered in connection with certain other facts as found.

It appears from the pleadings and findings that the two policies of insurance which were first issued were so issued and delivered to the

defendants in consideration of two promissory notes for $195 each. These policies were to run five years, and the court further finds that in and by the express terms of the notes and policies it was agreed by and between the parties that in no event should the defendants be called upon to pay more than the amount of said premium notes; and it is further found that before the assessment for which this action was brought was made the defendants had paid in cash and dividends the full amount of said premium notes to said insurance company. As respects the terms of the policies originally issued, we are unable to say that the contract was not as the court finds it to have been, in the absence of a fuller statement than appears by the record of what they contained. Neither can we assume that there may not have been evidence enough to warrant the finding in respect to the payment in full of their notes, by defendants.

But the action is not based upon the policies referred to, but upon an assessment made upon "duplicate" policies, or rather new policies of the same date, issued to take the place of those originally issued. The premium notes for $195 each were not, however, surrendered, and no new obligations incurred, by the defendants, except those assumed by them in accepting the new policies. It does not appear that the company assumed any new obligations by these policies, but it is found by the court that all the changes were for the benefit of the company. And the only change specifically disclosed by the record appears in the complaint, whereby the liability of the defendants is increased twofold by a provision inserted in the new policies, containing an agreement to pay, in addition to the premium, such assessments as might be made by the directors of the company, not exceeding five times the amount of the annual premium. There was no new undertaking on behalf of the company, and no surrender of any previous obligations of the defendant, beyond the old policies. The court also finds in substance that the defendants were misled and deceived by the statements and representations of the company, and in reliance thereon were fraudulently induced to surrender the old policies and accept the new ones, without comparing them or reading over the provisions and conditions of the new ones, and that they did not discover or learn of the provision above referred to in the new policies until the assessment here in question was made by the receiver. The repre-

sentations which induced the exchange were of a character calculated to mislead the policy holders, and throw them off their guard, and prevent a more careful inquiry and examination of the terms and conditions of the new policies in detail. The defendants were members of the company, and the representations made by the officers they would naturally rely on under such circumstances. The new policies were indorsed with the word "Duplicate" in large letters, and the court finds were forwarded to the defendants with a circular in which it was represented that by reason of a change in the insurance laws it was necessary to make some changes to comply therewith in certain states, and it was desirable to have a uniform policy; and that the new policy was more liberal and less onerous than the old, (of the same date and number,) which they requested should be promptly returned, assuring them that they would be serving their own interests in so doing. Under the circumstances, the defendants were naturally led to believe that the exchange was merely for the accommodation of the company,—a mere formal matter,—in no way changing their relations or increasing the obligations of the defendants; and this the court held was sufficient to excuse the latter for their failure to discover the difference in the policies before surrendering the old ones.

In other words, the company, having by its own false and fraudulent representations induced the defendants to surrender the original for the so-called "duplicate" policies, should not now be permitted to enforce the latter.

We are of the opinion that the court was right, and the judgment should be affirmed.

(Opinion published 56 N. W. Rep. 167.)